In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY ADOPTED MAY 21, 1997, BY THE TITLE BOARD PERTAINING TO PROPOSED INITIATIVE "1997–98 # 10."

Maynard K. YOST and Dan Ainsworth, Petitioners,

v.

Steve COFFIN and Dick Watt, Respondents,

and

Title Setting Board; and Honorable Victoria Buckley, Rebecca Lennahan, and Martha Phillips Allbright, as members of said Board, Respondents.

No. 97SA191.

Supreme Court of Colorado, En Banc.

July 28, 1997.

Friedlob Sanderson Raskin Paulson & Tourtillott, LLC, Christopher R. Paulson, Denver, for Petitioners.

Powers Phillips, P.C., Richard W. Daily, Denver, for Respondents Steve Coffin and Dick Watt.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section Denver, for Respondent Title Setting Board.

PER CURIAM.

The petitioners, Maynard K. Yost and Dan Ainsworth, are registered electors of Colorado who bring this original proceeding pursuant to section 1-40-107(2), 1B C.R.S. (1996 Supp.), to review the action taken by the initiative title setting board (title board) in fixing a title, ballot title and submission clause, and summary (titles and summary) for a proposed statutory amendment designated "1997-98 # 10" (the Initiative).[1] We hold that the titles and summary fairly express the intent and meaning of the initiative and that the fiscal impact statement is adequate. We do not reach the issues related to whether the titles and summary or the Initiative itself violate Article X, Section 20, of the Colorado Constitution (Amendment 1) because these issues are outside the scope of our review in this proceeding. Finally, we hold that because the amendments to the Initiative made by the proponents after the legislative hearing were made in direct response to the comments of the directors of the legislative council and the office of legislative legal services (the directors), it was not necessary to resubmit the amended Initiative to the directors. We therefore affirm the action of the title board.

I.

The Initiative seeks to add a new part 6 to article 4 of title 43 of the Colorado Revised Statutes, entitled the "Colorado Statewide Long Term Transportation Needs Act of 1997." The Initiative specifies that it is intended to provide the financing for the transportation needs of Colorado as identified in the Strategic Project Investment Program (SPIP), which was approved by the Colorado Transportation Commission (transportation commission) on August 15, 1996, and as determined by the counties and municipalities.

1. The text of the Initiative is contained in Appendix 1 to this opinion; the titles and summary are in Appendix 2.

The Initiative would impose an additional fuel excise tax, an additional motor vehicle registration fee, and a new wheels tax on the initial registration of any motor vehicle in the state, with certain exceptions. The fuel excise tax, additional registration fee, and the new wheels tax would be imposed until December 31, 2010, or until the completion of the projects described in the SPIP, whichever is earlier.

The Initiative would create the Colorado Long Term Highway Needs Account within the highway users tax fund. The additional fuel taxes and registration fees would be deposited in this account, and the General Assembly would be prohibited from making any annual appropriation from this account except for specified purposes.

The Colorado Long Term Multi–Modal Transportation Needs Account within the highway users tax fund would also be created for the deposit of the new wheels tax revenues. The General Assembly may make annual appropriations from this account only for the purposes specified in the Initiative.

The revenues deposited in both accounts would be allocated and appropriated in the following manner: 22% to the counties; 18% to the cities and incorporated towns; and the balance to the department of transportation.

The Initiative also provides that its adoption constitutes a voter-approved revenue change for purposes of Amendment 1. Therefore, the revenues derived as a result of the adoption of the Initiative are to be collected and expended by the state, counties, and municipalities without regard to the spending or revenue limits of Amendment 1.

Finally, "[t]he Colorado Transportation Commission shall study and implement, if feasible, toll roads to the extent that the revenues available under this part 6 are insufficient for the purposes of this part 6." Initiative, sec. 43–4–609.

II.

The petitioners assert that (1) the title board violated Amendment 1 by setting a title for a measure with unlimited revenue increase provisions; (2) the titles and summary fail to comply with the specific revenue gain disclosure requirement of Amendment 1; (3) the statement of fiscal impact is inadequate; (4) the titles and summary do not fairly express the intent and meaning of the Initiative; and (5) the proponents' amended petition should have been resubmitted to the directors.[2] These issues will be addressed in order.

A.

In their first two issues, the petitioners claim that the title board violated Amendment 1 in two ways. First, they claim that the title board violated Amendment 1 by setting a title and summary for a measure "which seeks to remove an unlimited amount of revenue from the revenue and spending limits set by Amendment 1 in contravention of the mandate of Amendment 1 to interpret its terms to 'restrain most the growth of government.'" Second, petitioners claim that the title and summary set by the title board fails to comply with the specific revenue gain disclosure requirements of Amendment 1 because it does not provide any estimate of the extent to which tolls will be used as a source of revenue to state, county, and local governments.

These questions are premature. Our review in these proceedings is circumscribed by statute:

The scope of our review of action taken by the Board is limited to ensuring that "the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." *In re Proposed Initiative on Sch. Pilot Program*, 874 P.2d [1066,] 1070 [ (Colo.1994) ] (citations omit-

**2.** In the proceedings before the title board and in their petition for review in this court, the petitioners also asserted that the title board did not have the authority to set the titles and summary because the proposed Initiative contains more

than one subject in violation of article V, section 1(5.5), of the Colorado Constitution. They have not raised or argued this issue in their opening brief, however, and we therefore do not reach it.

ted). In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's actions. *In re Proposed Initiative "Auto. Ins. Coverage"*, 877 P.2d 853, 856 (Colo. 1994). *We do not address the merits of a proposed initiative, nor do we interpret its language or predict its application if adopted by the electorate. In re Petition on Campaign and Political Fin.*, 877 P.2d 311, 313 (Colo.1994).

*In re Proposed Petitions*, 907 P.2d 586, 590 (Colo.1995) (emphasis added). A determination of whether the Initiative violates Amendment 1 would necessarily require us to "interpret its language or predict its application if adopted by the electorate" and this we will not do. We therefore do not address the petitioners' first two issues at this time.

### B.

▬ The petitioners next claim that the statement of fiscal impact, which is attached as Appendix 2, is inadequate. We disagree.

The summary must ordinarily include a fiscal impact statement in order to inform the electorate of the fiscal implications of the proposal. The Board is vested with discretion regarding how to best describe the fiscal impact without creating prejudice for or against the proposal. Explanation of the fiscal impact of a measure is not required when such impact cannot be determined from materials submitted to the Board due to uncertainties or variables inherent in the particular issue. If the Board has sufficient information to assess the fiscal impact of only certain provisions, it must provide fiscal information with regard to those provisions in isolation and should state which provisions have indeterminate fiscal impacts.

*In re Proposed Initiative on "Trespass–Streams With Flowing Water"*, 910 P.2d 21, 26 (Colo.1996) (citations omitted).

Pursuant to section 1–40–106(3)(a), 1B C.R.S. (1996 Supp.), the title board received the assistance of the Office of State Planning and Budgeting (OSPB) and the Department of Local Affairs (DOLA) in preparing the fiscal impact statement. The petitioners assert that the fiscal impact statement is inaccurate because it does not include any information concerning a revenue shortfall and the alternate method of funding that shortfall by the implementation of tolls. This information was known to the title board, the petitioners continue, through information submitted to it by the OSPB and the DOLA, as well as by the proponents of the Initiative.

In particular, the petitioners refer to the following information submitted by the DOLA:

The Strategic Project Investment Program adopted by the Colorado Transportation Commission on August 15, 1996, to which the measure refers, calls for $13 billion in highway investment needs. Therefore, we assume that the projects in that program will not be completed with available revenue, and that the taxes and fees imposed by the measure will continue until of [sic] December 31, 2010, as provided for in the measure.

The measure would generate about $2.4 billion through the year 2010, based upon projections of the Departments of Revenue and Transportation.

The petitioners assume that the difference between the $13 billion and $2.41 billion will necessarily constitute a "shortfall" which will require the imposition of tolls. However, as the title board points out, nothing in the Initiative requires the transportation commission to fund all of the SPIP projects or to compensate for the difference between the cost of the projects and revenue collected by the implementation of toll roads. The question of whether tolls will actually be imposed is therefore uncertain at this point, and the title board is not required to engage in such speculation. *See In re Proposed Initiative on "Trespass–Streams With Flowing Water"*, 910 P.2d at 27.

▬ This is not the same situation as in *In re Proposed Initiative 1996–17*, 920 P.2d 798, 805 (Colo.1996), where we found that "[i]n the unusual case such as this where there are discrete determinable possibilities depending on the outcome of a given study, the Board should inform the voters of the costs of those outcomes." In this case, the title board acted within its discretion in not speculating

about whether the transportation commission will impose tolls. We conclude that the fiscal impact statement is adequate.

### C.

■ Section 1–40–102(10), 1B C.R.S. (1996 Supp.), requires the title to be a "brief statement that fairly and accurately represents the true intent and meaning of the proposed text of the initiative." "In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." § 1–40–106(3)(b), 1B C.R.S. (1996 Supp.). "The language employed by the Board in fixing a title will be rejected only if it is misleading, inaccurate, or fails to reflect the central features of the proposed initiative." *In re Petition Procedures*, 900 P.2d 104, 108 (Colo. 1995).

The petitioners assert that the title and summary set by the title board are misleading in two respects: first, because it does not contain a complete list of projects "described in the program approved on August 15, 1996, by the Colorado Transportation Commission"; and second, it does not clarify that "unquantified sources of revenue [may be removed] from the limitations on revenue raising imposed by Amendment 1."

■ The titles and summary track the language of the Initiative with respect to the programs and the sources of revenue. The petitioners are in fact complaining that the Initiative itself is vague and misleading. However, the title board has performed its job in setting the titles and summarizing the measure. Any problems in the interpretation of the measure or its constitutionality are beyond the functions assigned to the title board, *see* § 1–40–106(3), 1B C.R.S. (1996 Supp.), and outside the scope of our review of the title board's actions, *see In re Proposed Petitions*, 907 P.2d at 590. The titles and summary are not misleading for the purposes of this proceeding.

### D.

■ The last allegation is that the proponents' amended petition should have been resubmitted to the directors. The original proposed Initiative was submitted to the directors on or about March 25, 1997. On April 7, 1997, the directors submitted a list of written questions to the proponents. After a hearing was held on April 8, the proponents submitted an amended draft of the Initiative to the secretary of state. The petitioners assert that the failure of the proponents to resubmit the amended draft to the directors before submitting it to the secretary of state violated section 1–40–105(2), 1B C.R.S. (1996 Supp.), which provides in relevant part:

(2) After the public meeting but before submission to the secretary of state for title setting, the proponents may amend the petition in response to some or all of the comments of the directors of the legislative council and the office of legislative legal services, or their designees. *If any substantial amendment is made to the petition, other than an amendment in direct response to the comments of the directors of the legislative council and the office of legislative legal services, the amended petition shall be resubmitted to the directors for comment* in accordance with subsection (1) of this section prior to submittal to the secretary of state as provided in subsection (4) of this section.

§ 1–40–105(2), 1B C.R.S. (1996 Supp.) (emphasis added). The title board and the proponents contend that the amendments made to the original proposed Initiative were in fact made "in direct response to the comments of the directors of the legislative council and the office of legislative legal services" and that resubmission was not required under section 1–40–105(2). Comparing the annotated redlined version of the proposed Initiative which shows the amendments with the directors' comments and questions in their April 7 letter and at the April 8 hearing, we conclude that the amended portions of the proposed Initiative were made in response to those comments and that no resubmission was required by section 1–40–105(2).

### III.

Accordingly, we approve the action of the title board in setting the titles and summary for proposed initiative 1997–98 # 10.

### APPENDIX 1

Filed with Secretary of State 4/16/97

Be It Enacted by the People of the State of Colorado:

Article 4 of Title 43, Colorado Revised Statutes is amended by the addition of a new Part 6, as follows:

Section 43–4–601. **Short Title.** This part 6 shall be known as the "Colorado Statewide Long Term Transportation Needs Act of 1997".

Section 43–4–602. **Declaration.** The adoption of this part 6 is intended to provide financing for the transportation needs of the State including improvements to interstate highways, state highways, county highways, the city streets and other multi-modal transportation projects in various locations in the State, as more specifically identified in the Strategic Project Investment Program and as determined by the governing bodies of counties and municipalities which receive funds pursuant to this part 6. The increase in the number of motor vehicles on the highways of the State impacts the State's economy and the quality of life in the State. It is the intention of the people in adopting Section 43–4–605 that vehicles registered in the State after the effective date of this part 6 which add to the total number of vehicles registered in the State should be assessed a one-time tax to assist in the financing of transportation improvements in the State.

Section 43–4–603. **Imposition of Additional Fuel Tax.** From the effective date of this part 6 to the earlier of December 31, 2010 or the completion of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996, the excise taxes imposed by Sections 39–27–102 and 39–27–202 shall be increased five cents per gallon except that the tax on fuel for the propulsion of aircraft imposed pursuant to Section 39–27–102(1)(a)(iv) shall not be increased. Such taxes shall be collected in the same time and manner and subject to the same exemptions as the taxes imposed pursuant to Sections 39–27–102 and 39–27–202.

Section 43–4–604. **Imposition of Additional Registration Fee.** From the effective date of this part 6 to the earlier of December 31, 2010 or the completion of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996, there is hereby imposed an additional registration fee on the registration of motor vehicles of ten dollars per vehicle. Such fee shall be in addition to the fees imposed pursuant to Section 42–3–134. Such fees shall be collected in the same time and manner and subject to the same exemptions as the fees imposed pursuant to Section 42–3–134. No such fee will be collected for the registration of a motor vehicle which is exempt from the payment of the fees imposed pursuant to Section 42–3–134.

Section 43–4–605. **Imposition of New Wheels Tax.** (1) From the effective date of this part 6 to the earlier of December 31, 2010 or the completion of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996, there is hereby imposed a new wheels tax of one hundred dollars on the initial registration of any motor vehicle in the State. Such tax shall be collected in the same time and manner and subject to the same exemptions as the fees imposed pursuant to Section 42–3–134. For the purposes of this section, "initial registration" shall mean the first time a motor vehicle is registered in the name of the owner of such vehicle in the State. Such tax shall not apply to:

(a) The registration of a motor vehicle for which such owner has previously paid the tax imposed pursuant to this section in a prior year and which has been continuously registered in the State in the name of the same owner since the payment of such tax.

(b) The registration of a motor vehicle if the owner thereof has acquired such vehicle to replace a motor vehicle which is sold, transferred or disposed of within 90 days before or after such registration or to replace

a motor vehicle which has been destroyed or which such owner certifies is no longer operational. A refund of the tax imposed pursuant to this section shall be granted to any person who, within 90 days after paying such tax, sells, transfers or otherwise disposes of another motor vehicle.

(c) The registration of a motor vehicle which is exempt from the payment of registration fees imposed pursuant to Section 42-3-134.

(d) The renewal of the registration of any motor vehicle by a person in whose name such motor vehicle has been registered in the State immediately prior to and at all times since the effective date of this section.

(e) An initial registration resulting from a transfer of title between joint owners of a motor vehicle.

(2) The executive director of the department of revenue is authorized to adopt such rules, regulations and forms as the director deems necessary for the collection of the new wheels tax and the administration and enforcement of this section.

Section 43-4-606. **The Colorado Long Term Highway Needs Account.**

(1) There is hereby created in the state treasurer's office within the highway users tax fund the Colorado Long Term Highway Needs Account. The revenues derived from Sections 43-4-603, and 43-4-604, net of the costs of collection and refunds, shall be deposited to the Long Term Highway Needs Account. The general assembly shall not make any annual appropriation (whether by regular, special, or supplementary appropriation) or any statutory distribution from the Long Term Highway Needs Account for any purpose or purposes other than as set forth in this section. All moneys in the Long Term Highway Needs Account are appropriated to the recipients of the revenues described in subsection 2 of this section for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of, the state highway system, the county highway systems, the city street systems, and other public roads and high-

ways of the state in accordance with this section.

(2) The revenues in the Long Term Highway Needs Account shall be allocated as follows:

(a) Twenty-two percent of such revenue shall be paid to the county treasurers of the respective counties, subject to annual appropriation by the general assembly, and shall be allocated and expended as provided in section 43-4-207.

(b) Eighteen percent of such revenue shall be paid to the cities and incorporated towns, subject to annual appropriation by the general assembly, and shall be allocated and expended as provided in section 43-4-208(6)(a).

(c) The balance of such revenue shall be expended by the Department of Transportation for the acquisition, construction, maintenance, improvement or operation of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996.

Section 43-4-607. **The Colorado Long Term Multi-Modal Transportation Needs Account.**

(1) There is hereby created in the state treasurer's office within the highway users tax fund the Colorado Long Term Multi-Modal Transportation Needs Account. The revenues derived from Section 43-4-605, net of the costs of collection and refunds, shall be deposited to the Long Term Multi-Modal Transportation Needs Account. The general assembly shall not make any annual appropriation (whether by regular, special, or supplementary appropriation) or any statutory distribution from the Long Term Multi-Modal Transportation Needs Account for any purpose or purposes other than as set forth in this section. All moneys in the Long Term Multi-Modal Transportation Needs Account are appropriated by the recipients of the revenues described in subsection 2 of this section for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of the state highway system, the county highway systems, the city street systems, and other public roads

and highways of the state, and any system which transports the public by bus, rail or other means of conveyance regardless of whether such system is located in the right-of-way of a public road, street or highway, and in accordance with this section.

(2) The revenues in the Long Term Multi-Modal Transportation Needs Account shall be allocated as follows:

(a) Twenty-two percent of such revenue shall be paid to the county treasurers of the respective counties, subject to annual appropriation by the general assembly, and shall be allocated and expended as provided in section 43–4–207 except that such moneys may be expended for any of the purposes set forth in subsection (1) of this section.

(b) Eighteen percent of such revenue shall be paid to the cities and incorporated towns, subject to annual appropriation by the general assembly, and shall be allocated and expended as provided in section 43–4–208(6)(a) except that such moneys may be expended for any of the purposes set forth in subsection (1) of this section.

(c) The balance of such revenue shall be expended by the Department of Transportation for the acquisition, construction, maintenance, improvement or operation of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996.

Section 43–4–608. **Revenue Change.** In order to assure that the revenues derived pursuant to this part 6 are available for the purposes intended by the people, the adoption of this part 6 shall constitute a voter approved revenue change for the purposes of Subsection 7 of Article X, Section 20 of the Colorado Constitution. It is the intention of the people in adopting this part 6 that the revenues derived under this part 6 be used to meet Colorado's long term transportation needs and that the additional revenues derived under this part 6 should be collected and expended by the State, counties and municipalities without regard to the spending or revenue limits of Article X, Section 20 of the Colorado Constitution and without affecting the ability of the State, counties and municipalities to collect and spend other revenues.

Section 43–4–609. **Tolls.** The Colorado Transportation Commission shall study and implement, if feasible, toll roads to the extent that the revenues available under this part 6 are insufficient for the purposes of this part 6.

Section 43–4–610. **Strategic Project Investment Program.** The Colorado Transportation Commission shall annually in the month of January beginning in 1999 report to the general assembly and the department of revenue concerning the status of completion of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996. If all of such projects are completed, as determined by the Colorado Transportation Commission prior to December 31, 2010, the Colorado Transportation Commission shall notify the general assembly and department of revenue of such completion.

Section 43–4–610. **Severability.** If any section, paragraph, clause, or provision of this act shall for any reason be held to be invalid or unenforceable, the invalidity or unenforceability of such section, paragraph, clause, or provision shall not affect any of the remaining provisions of this act, the intent being that the same are severable.

Section 43–4–611. **Effective Date.** This part 6 shall take effect as provided in Article V, Section 1(4) of the Constitution, provided that the increased taxes and fees imposed pursuant to this part take effect thirty days after the effective date of this part 6.

### APPENDIX 2

### Proposed Initiative "1997–98—# 10"

The title as designated and fixed by the Board is as follows:

STATE TAXES SHALL BE INCREASED $172.8 MILLION ANNUALLY IN THE FIRST FULL FISCAL YEAR OF IMPLEMENTATION, AND BY WHATEVER ADDITIONAL AMOUNTS ARE RAISED ANNUALLY THEREAFTER,

UNTIL THE EARLIER OF DECEMBER 31, 2010, OR THE COMPLETION OF PROJECTS DESCRIBED IN THE PROGRAM APPROVED ON AUGUST 15, 1996 BY THE COLORADO TRANSPORTATION COMMISSION, BY AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING TRANSPORTATION FUNDING, AND, IN CONNECTION THEREWITH, INCREASING THE FUEL EXCISE TAX BY 5¢ PER GALLON; INCREASING THE MOTOR VEHICLE REGISTRATION FEE BY $10; IMPOSING A NEW TAX OF $100 ON THE INITIAL REGISTRATION OF CERTAIN MOTOR VEHICLES; CREATING THE COLORADO LONG TERM HIGHWAY NEEDS ACCOUNT AND THE COLORADO LONG TERM MULTI–MODAL TRANSPORTATION NEEDS ACCOUNT; AUTHORIZING THE STUDY AND IMPLEMENTATION, IF FEASIBLE, OF TOLL ROADS TO THE EXTENT THAT THE REVENUES AVAILABLE ARE NOT SUFFICIENT TO CARRY OUT THE PURPOSES OF THE MEASURE; SPECIFYING THE REVENUES TO BE DEPOSITED THEREIN, THE AMOUNT OF REVENUES ALLOCATED TO THE STATE, COUNTIES, AND MUNICIPALITIES, THE TRANSPORTATION PURPOSES FOR WHICH THE REVENUES MAY BE EXPENDED, AND THAT SUCH REVENUES BE COLLECTED AND SPENT BY THE STATE, COUNTIES, AND MUNICIPALITIES AS A VOTER–APPROVED REVENUE CHANGE UNDER ARTICLE X, SECTION 20 OF THE COLORADO CONSTITUTION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL STATE TAXES BE INCREASED $172.8 MILLION ANNUALLY IN THE FIRST FULL FISCAL YEAR OF IMPLEMENTATION, AND BY WHATEVER ADDITIONAL AMOUNTS ARE RAISED ANNUALLY THEREAFTER, UNTIL THE EARLIER OF DECEMBER 31, 2010, OR THE COMPLETION OF PROJECTS DESCRIBED IN THE PROGRAM APPROVED ON AUGUST 15, 1996 BY THE COLORADO TRANSPORTATION COMMISSION, BY AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING TRANSPORTATION FUNDING, AND, IN CONNECTION THEREWITH, INCREASING THE FUEL EXCISE TAX BY 5¢ PER GALLON; INCREASING THE MOTOR VEHICLE REGISTRATION FEE BY $10; IMPOSING A NEW TAX OF $100 ON THE INITIAL REGISTRATION OF CERTAIN MOTOR VEHICLES; CREATING THE COLORADO LONG TERM HIGHWAY NEEDS ACCOUNT AND THE COLORADO LONG TERM MULTI–MODAL TRANSPORTATION NEEDS ACCOUNT; AUTHORIZING THE STUDY AND IMPLEMENTATION, IF FEASIBLE, OF TOLL ROADS TO THE EXTENT THAT THE REVENUES AVAILABLE ARE NOT SUFFICIENT TO CARRY OUT THE PURPOSES OF THE MEASURE; SPECIFYING THE REVENUES TO BE DEPOSITED THEREIN, THE AMOUNT OF REVENUES ALLOCATED TO THE STATE, COUNTIES, AND MUNICIPALITIES, THE TRANSPORTATION PURPOSES FOR WHICH THE REVENUES MAY BE EXPENDED, AND THAT SUCH REVENUES BE COLLECTED AND SPENT BY THE STATE, COUNTIES, AND MUNICIPALITIES AS A VOTER–APPROVED REVENUE CHANGE UNDER ARTICLE X, SECTION 20 OF THE COLORADO CONSTITUTION?

The summary prepared by the Board is as follows:

The measure creates a new Part 6 in Article 4 of Title 43, Colorado Revised Statutes, entitled the "Colorado Statewide Long Term Transportation Needs Act of 1997" ("Act"). The measure specifies that the adoption of this Act is intended to provide financing for the transportation needs of the State as specifically identified in the Strategic Project Investment Program as approved by the Colorado Transportation Commission on August 15, 1996, and as determined by the governing bodies of counties and municipalities.

The measure imposes an additional fuel excise tax of 5¢ per gallon to be collected at

the same time and in the same manner and subject to the same exemptions as fuel currently subject to taxation. The additional fuel excise tax will not be imposed on fuel for the propulsion of aircraft.

The measure imposes an additional $10 registration fee on the registration of motor vehicles to be collected at the same time and in the same manner and subject to the same exemptions as the current registration fees of motor vehicles.

The measure imposes a new wheels tax of $100 on the initial registration of any motor vehicle in the state to be collected at the same time and in the same manner and subject to the same exemptions as the current registration fees on motor vehicles. The new wheels tax does not apply to the following:

● The registration of a motor vehicle on which the new wheels tax was paid in a prior year and which has been continuously registered in Colorado in the name of the same owner since the payment of such tax;

● The registration of a motor vehicle that the owner has acquired to replace a vehicle that is sold, transferred, or disposed of within 90 days before or after such registration or to replace a vehicle that has been destroyed or is no longer operational;

● The registration of a motor vehicle that is exempt under current law from the payment of registration fees;

● The renewal of the registration of any motor vehicle by a person in whose name such vehicle has been registered in Colorado immediately prior to and at all times since the effective date of this Act; and

● The initial registration resulting from a transfer of title between joint owners of a motor vehicle.

The measure specifies that the additional fuel excise tax, the additional registration fee, and the new wheels tax will be imposed until December 31, 2010, or the completion of the projects described in the Strategic Project Investment Program approved by the Colorado Transportation Commission on August 15, 1996, whichever is earlier.

The measure creates the Colorado Long Term Highway Needs Account within the Colorado Highway Users Tax Fund for the deposit of the revenues from the additional fuel excise tax of 5¢ per gallon and the additional $10 registration fee. The General Assembly is prohibited from making any annual appropriation or statutory distribution from this account for any purpose other than for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of, the state highway system, the county highway systems, the city street systems, and other public roads and highways of the state.

The measure creates the Colorado Long Term Multi–Modal Transportation Needs Account within the Colorado Highway Users Tax Fund for the deposit of the revenues derived from the new wheels tax. The General Assembly is prohibited from making any annual appropriation or statutory distribution from this account for any purpose other than for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of the state highway system, the county highway systems, the city streets systems, and other public roads and highways of the state, or for any system that transports the public by bus, rail, or other means of conveyance regardless of whether such system is located in the right-of-way of a public road, street, or highway.

The measure requires the revenues deposited in the Colorado Long Term Highway Needs Account and the Colorado Long Term Multi–Modal Transportation Needs Account to be allocated and appropriated as follows: 22 percent to the counties, 18 percent to the cities and incorporated towns, and the balance of the revenues to the Department of Transportation for the acquisition, construction, maintenance, improvement, or operation of the projects described in the Strategic Project Investment Program. The measure specifies that counties and municipalities are to expend such revenues in the same manner as any other revenues received from the

Highway Users Tax Fund; except that the counties and municipalities are allowed to expend the revenues derived from the Colorado Long Term Multi–Modal Transportation Needs Account for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of the state highway system, the county highway systems, the city streets systems, and other public roads and highways of the state, or for any system that transports the public by bus, rail, or other means of conveyance regardless of whether such system is located in the right-of-way of a public road, street, or highway.

The measure specifies that the adoption of the Act constitutes a voter-approved revenue change for purposes of Section 20(7) of Article X of the Colorado Constitution. The revenues derived under this Act are to be collected and expended by the State, counties, and municipalities without regard to the spending or revenue limits of Section 20 of Article X of the Colorado Constitution and without affecting the ability of the State, counties, and municipalities to collect and spend other revenues.

The measure requires the Colorado Transportation Commission to study and implement, if feasible, toll roads if the revenues available under this Act are insufficient for the transportation purposes specified therein.

The Colorado Transportation Commission shall report periodically to the General Assembly and the Department of Revenue concerning the status of the project and the completion thereof.

The measure specifies that this Act is severable so that if any section, clause, or provision of the Act is found to be invalid or unenforceable, such invalidity will not affect the remaining provisions of the Act.

The measure specifies that this Act will take effect as provided in Section 1(4) of Article V of the Colorado Constitution and that the taxes and fees imposed in the Act will take effect 30 days thereafter.

### Fiscal Statement—Proposed Initiative # 1997–98—10

The Department of Revenue and Department of Transportation estimate that the measure would generate about $2.41 billion over the 13–year period beginning January 1, 1998, through the year 2010 as follows:

13–Year Projection:

### Colorado Long Term Highway Needs Account

$1.615 billion Fuel Tax + $408 million Registration Fees

= $2.023 billion Total

State (60%) = $1.214 billion

Counties (22%) = $445 million

Municipalities (18%) = $364 million

### Colorado Multi–Modal Transportation Needs Account

$387 million Total "New Wheels Tax"

State (60%) = $232 million

Counties (22%) = $85 million

Municipalities (18%) = $70 million

Total Positive Fiscal Impact:

State and Local Share = $2.41 billion

State = $1,446 billion

Counties = $530 million

Municipalities = $434 million

5/7/97 Hearing

Adjourned 4:15 p.m.