In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY WITH REGARD TO A PROPOSED PETITION FOR AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO ADDING SECTION 2 TO ARTICLE VII (PETITIONS).

Thomas M. Sutherland and Kenneth P. Katt, Petitioners,

and

Douglas Campbell and Dennis Polhill, Respondents,

and

Victoria Buckley, Stephen Erkenbrack, and Rebecca Lennahan, Title Setting Board.

No. 95SA276.

Supreme Court of Colorado, En Banc.

Dec. 4, 1995.

Rehearing Denied Jan. 8, 1996.

---

Susan E. Burch, Denver, for petitioners.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice Knaizer, Deputy Attorney General, Denver, for Title Board.

Douglas Campbell, Dennis Polhill, Arvada, for respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioners Thomas M. Sutherland and Kenneth P. Katt (the objectors), pursuant to section 1–40–107(2), 1B C.R.S. (1995 Supp.), have filed a petition to review the action of the initiative title setting board (the Board) in setting the title, ballot title and submission clause, and summary for an amendment to article VII of the Colorado Constitution, designated "Proposed Initiative on Petitions" (hereafter "the Initiative"), proposed by respondents Douglas Campbell and Dennis Polhill (the proponents).[1] The Initiative contains provisions pertaining to rights of initiative and referendum and provisions altering the procedures governing the exercise of such rights. The text of the Initiative is attached hereto as APPENDIX A. The text of the title, ballot title and submission clause, and summary as prepared by the Board are attached hereto as APPENDIX B.

The objectors argue that the Initiative impermissibly encompasses multiple, unrelated subjects. In addition, they contend that the

title, ballot title and submission clause, and summary fail to correctly and fairly express the true intent and meaning of the Initiative and would therefore confuse and mislead the public. We approve the action of the Board.

## I

On July 21, 1995, the proponents submitted the Initiative to the Colorado Secretary of State. On August 2, 1995, the Board set a title, ballot title and submission clause, and summary for the Initiative. On August 9, 1995, the objectors filed a motion for rehearing pursuant to section 1–40–107(1), 1B C.R.S. (1994 Supp.), alleging that the Initiative did not conform to the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution; that the title, ballot title and submission clause, and summary did not correctly and fairly reflect the true intent and meaning of the Initiative; and that the title, ballot title and submission clause, and summary were misleading and likely to cause confusion. On August 16, 1995, after a hearing on the motion, the Board denied the motion for rehearing.

## II

Article V, section 1 of the Colorado Constitution reserves to the registered electors of the State of Colorado the right to initiate constitutional amendments. Article V, section 1(5.5) of the Colorado Constitution, a referred amendment approved by the electorate in the 1994 general election, contains the following pertinent provisions concerning the content of proposed measures:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot

---

1. Prior to filing the Initiative, the proponents had filed a similar measure with the Colorado Secretary of State. We ultimately determined that the measure encompassed more than one subject and that the title set by the Board did not provide a clear, concise summary of the proposed

amendment. *In re Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petition Procedures)*, 900 P.2d 104, 109 (Colo.1995) (hereafter *"In re Petition Procedures"*).

be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls. . . .

Colo. Const. art. V, § 1(5.5); *see* Senate Concurrent Resolution 93–4, 1993 Colo.Sess. Laws 2152. In 1994, the General Assembly enacted section 1–40–106.5, 1B C.R.S. (1994 Supp.) to implement the single-subject requirement. *See* Ch. 22, sec. 1, § 1–40–106.5, 1994 Colo.Sess.Laws 73. That statute contains the following pertinent provisions:

**Single-subject requirements for initiated measures and referred constitutional amendments—legislative declaration.** (1) The general assembly hereby finds, determines, and declares that:

(a) Section 1(5.5) of article V and section 2(3) of article XIX of the state constitution require that every constitutional amendment or law proposed by initiative and every constitutional amendment proposed by the general assembly be limited to a single subject, which shall be clearly expressed in its title.

(b) Such provisions were referred by the general assembly to the people for their approval at the 1994 general election pursuant to Senate Concurrent Resolution 93–4.

(c) The language of such provisions was drawn from section 21 of article V of the state constitution, which requires that every bill, except general appropriation bills, shall be limited to a single subject, which shall be clearly expressed in its title.

(d) The Colorado supreme court has held that the constitutional single-subject requirement for bills was designed to prevent or inhibit various inappropriate or misleading practices that might otherwise occur, and the intent of the general assembly in referring to the people section 1(5.5) of article V and section 2(3) of article XIX was to protect initiated measures and referred constitutional amendments from similar practices.

(e) The practices intended by the general assembly to be inhibited by section 1(5.5) of article V and section 2(3) of article XIX are as follows:

(I) To forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits;

(II) To prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.

(2) It is the intent of the general assembly that section 1(5.5) of article V and section 2(3) of article XIX be liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum.

(3) It is further the intent of the general assembly that, in setting titles pursuant to section 1(5.5) of article V, the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills.

§ 1–40–106.5, 1B C.R.S. (1995 Supp.). The single-subject requirement is designed to protect voters against fraud and surprise and to eliminate the practice of combining several unrelated subjects in a single measure for the purpose of enlisting support from advocates of each subject and thus securing the enactment of measures which might not otherwise be approved by voters on the basis of the merits of those discrete measures. *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076, 1078 (Colo.1995); *In re Proposed Initiative on Sch. Pilot Program*, 874 P.2d 1066, 1069 (Colo.1994).

In order to aid electors in seeking to exercise the right to initiate constitutional amendments, the Board has the duty to designate and fix a title, a ballot title and submission clause, and a summary for initiated petitions before they are signed by electors. *In re Proposed Initiative on Sch. Pilot Program*, 874 P.2d at 1069. The purpose of the title

setting process is to ensure that persons reviewing the initiative petition and voters are fairly advised of the import of the proposed amendment. *Id.* at 1070.

■■■ The title and the ballot title and submission clause of a proposed constitutional amendment must fairly express the true intent and meaning of that amendment. § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.). The title must consist of a brief statement accurately reflecting the meaning of the proposed initiative. *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1069. The Board is not required to describe every feature of a proposal in the title and ballot title and submission clause. *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito,* 873 P.2d 733, 739 (Colo.1994). However, the Board must "consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." *Id.; In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1069. The language employed by the Board will be rejected where such language is misleading, inaccurate, or fails to reflect the central features of the proposed initiative. *In re Petition on Campaign and Political Fin.,* 877 P.2d 311, 313 (Colo.1994). The Board must also prepare an impartial summary of the proposed amendment, one not likely to create prejudice either for or against the proposal. § 1–40–106(3)(a), 1B C.R.S. (1995 Supp.).

■■ A proponent of an initiated measure or any registered elector who believes a title, ballot title and submission clause, or summary fixed by the Board does not fairly express the true intent of the proposal may file a motion with the Board for a rehearing on the matter and, if such motion is denied, may request review of the Board's action by this court. § 1–40–107(2), 1B C.R.S. (1995 Supp.); *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1070. The scope of our review of action taken by the Board is

limited to ensuring that "the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1070 (citations omitted). In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's actions. *In re Proposed Initiative "Auto. Ins. Coverage",* 877 P.2d 853, 856 (Colo.1994). We do not address the merits of a proposed initiative, nor do we interpret its language or predict its application if adopted by the electorate. *In re Petition on Campaign and Political Fin.,* 877 P.2d 311, 313 (Colo.1994).[2]

### III

### A

■■ The objectors contend that the Initiative does not contain a single subject and therefore violates article V, section 1(5.5) of the Colorado Constitution. We disagree.

■■ A proposed measure impermissibly includes more than one subject if its text relates to more than one subject and if the measure has at least two distinct and separate purposes which are not dependent upon or connected with each other. *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d 1076, 1078–79 (Colo.1995); *see People v. Sours,* 31 Colo. 369, 405, 74 P. 167, 178 (1903) (interpreting single-subject requirement for bills). Minor provisions necessary to effectuate the purpose of the measure are properly included within its text. *See Board of Comm'rs of El Paso County v. Board of Comm'rs of Teller County,* 32 Colo. 310, 312, 76 P. 368, 368 (1904).

We conclude that the text of the Initiative encompasses a single, if quite general, subject. The Initiative addresses numerous issues regarding the subject of "petitions," in-

---

2. Thus, the objectors' contention that numerous constitutional and statutory provisions are

amended or repealed by implication by the Ini-

cluding both initiated and referred petitions.[3] The Initiative defines the right to petition and establishes a battery of procedures which govern the exercise of that right. Those provisions include, among other things, various time limitations; guidelines for formatting and filing petitions; procedures for challenging ballot titles and petitions on single-subject grounds; and rules regarding printing, distribution, and format of petition forms. The Initiative prohibits limitation of peaceful petitioning on public, district-owned property; limits the number of legislative measures which may be excepted from referendum petitions; describes certain procedures related to the exception process; and provides guidelines for distribution to voters of information regarding petitions. It also defines certain terms used in the Initiative, expresses general guidelines for interpretation of petitions, and authorizes lawsuits as a remedy for violations of the proposed provisions. The provisions regarding lawsuits authorize recovery of court costs and attorney fees by successful plaintiffs and by defendants who establish that lawsuits are frivolous.

Although the Initiative is comprehensive, all of its numerous provisions relate to the single purpose of reforming petition rights and procedures. *See In re House Bill No. 1353,* 738 P.2d 371, 372–73 (Colo.1987) (forty-four page bill violated single-subject requirement where bill covered such disparate topics as reduction of state contributions to employees' retirement funds and charging department of corrections inmates' accounts for medical visits).[4] Thus, the Initiative does not attempt to further two or more unconnected purposes. *See In re Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Subsection (10) to Section 20 of Article X (Amend Tabor 25),* 900 P.2d 121, 125 (Colo.1995) (tax credit and procedural requirements for future ballot titles were two unconnected purposes); *In re Proposed Initiative "Public Rights in Water II",* 898 P.2d 1076, 1080 (Colo.1995) (election and boundary rules for water conservancy and conservation districts and effective enforcement and development of a "strong public trust" doctrine were two unrelated purposes). Furthermore, because its numerous parts all relate to the subject of "petitions," the Initiative does not combine unrelated, incongruous subjects in an effort to defraud the public and cause voters to inadvertently adopt measures they do not support in the process of voting for measures they do support. *See* § 1–40–106.5(1)(e)(I), (II), 1B C.R.S. (1995 Supp.).

### B

■ The objectors contend that even if the Initiative contains only one subject, the title, ballot title and submission clause, and summary do not correctly and fairly reflect the true intent and meaning of the proposal. We again disagree.

■ The Board's duty in creating a title, ballot title and submission clause, and summary is to summarize the central features of the proposal. *In re Petition on Sch. Fin.,* 875 P.2d 207, 210 (Colo.1994). Not every feature of a proposed measure must appear in the title, ballot title and submission clause, and summary. *See In re Proposed Initiated Constitutional Amendment Concerning the*

---

tiative exceeds the scope of our review in this proceeding.

**3.** The objectors do not argue that the Initiative's reference to both initiative and referendum processes results in a measure containing two subjects. The constitutional provisions establishing initiative and referendum procedures are commonly associated with each other and reflect a common interest in providing measures by which the electors of Colorado may directly amend the constitution. *See* Colo. Const. art. V, § 1 (designated "General assembly—initiative and referendum"); §§ 1–40–101 to –133, 1B C.R.S. (1980 & 1995 Supp.) (designating Article 40 "Initiative and Referendum").

The measure we considered in *In re Petition Procedures* contained provisions regarding initiative, referendum, and recall. The Colorado Constitution does not address all three of these processes in a single section. *See In re Petition Procedures,* 900 P.2d 104, 109 (Colo.1995).

**4.** The legislative declaration regarding the single-subject requirement for initiated measures and referred constitutional amendments provides that the Board should apply to those measures judicial decisions which construe the constitutional single-subject requirement for bills. *See* § 1–40–106.5(3), 1B C.R.S. (1995 Supp.).

*Fair Treatment of Injured Workers Amendment,* 873 P.2d 718, 720–21 (Colo.1994); *see also* § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.) (title and ballot title and submission clause should be brief). Only when the language used by the Board is clearly misleading will we find the Board's action to be invalid. *In re Petition on Campaign and Political Fin.,* 877 P.2d 311, 313 (Colo.1994).

As we have noted, the title and ballot title and submission clause need not describe every feature of a proposal. *In Re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito,* 873 P.2d 733, 739 (Colo.1994). Here, the title and ballot title and submission clause indicate that the Initiative addresses issues relevant to both the initiative process and the referendum process and highlight numerous important features of the Initiative. *See Board of Comm'rs of El Paso County v. Board of Comm'rs of Teller County,* 32 Colo. 310, 312, 76 P. 368, 368 (1904) (mere exclusion of minor provisions from title of bill does not indicate that included provisions are the only provisions to be legislated upon). Furthermore, the broad subject, "petitions," does not conceal any feature of the Initiative. If each of the numerous changes were listed in the title and ballot title and submission clause, the goal of brevity in titles would be defeated. § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.); *see In re Initiative Concerning "Taxation III",* 832 P.2d 937, 942 (Colo.1992) (where measure was "complicated" and contained numerous inclusions and exclusions, full explanation of each in title and ballot title and submission clause was not required and would only confuse voters).

The objectors contend that the title and ballot title and submission clause impermissibly fail to describe important features of the Initiative and are therefore misleading. By way of example, they argue that while the title and ballot title and submission clause disclose that the ballot title for an initiative shall be limited to 100 words, those documents do not reflect the fact that the Initiative prescribes specific language for referendum titles.[5] With regard to this example, we find no constitutional impediment to the Board's apparent determination that the provision of the Initiative specifying language to be used in referendum ballot titles was not a central feature of the Initiative. As a whole, we do not find the title and ballot title and submission clause to be misleading because of the Board's election not to refer to several matters addressed by the Initiative.[6]

A summary must contain a true and impartial statement of the intent of the proposed measure and must not contain language that would be likely to create prejudice either for or against the measure. § 1–40–106(3)(a), 1B C.R.S. (1995 Supp.); *In re Second Initiated Constitutional Amendment Respecting the Rights of the Pub. to Uninterrupted Serv. by Pub. Employees of 1980,* 200 Colo. 141, 144, 613 P.2d 867, 869 (1980). In this case, the summary is written in nonlegalistic language, basically follows the text of the Initiative, and includes a concise description of most of the provisions contained in the Initiative. Very few details appearing in the text of the Initiative are absent from the summary. The objectors argue that the summary is deficient because it does not refer to the Initiative's provision that if vot-

---

5. The Initiative requires that referendum petition ballot titles must adhere to the following phraseology: "SHALL (DISPUTED SECTIONS OF) (type of measure and number only) BE APPROVED?"

6. Other examples of what the objectors argue constitute impermissible deficiencies in the title and ballot title and submission clause include the fact that the title and ballot title and submission clause do not specifically identify the rights changed or added by the Initiative; the fact that the language in the title and ballot title and submission clause describing the extension of petition powers differs from the language in the Initiative; the fact that the title and ballot title

and submission clause do not disclose that a three-fourths vote would be necessary to except a law from possible referendum petitions and do not state that a measure rejected by voters after a referendum petition may be partly or fully enacted within 8 years only with voter approval; and the fact that the title and ballot title and submission clause inadequately reflect the fact that the Initiative eliminates the requirement that a person signing a petition must designate a residence address that includes the county of residence. The Board's decision not to address these features of the Initiative does not, in our view, render the title and ballot title and submission clause misleading.

ers reject a measure after a referendum petition the measure cannot be enacted within eight years absent voter approval. They also argue that the fiscal information contained in the summary impermissibly fails to note that some districts will face new costs and improperly fails to distinguish between potential state costs and potential local costs. As previously discussed, our review is limited to whether the summary is impartial and clearly reflects the purpose of the Initiative. *See* § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.). The objectors provide no evidence to support their suggestion that the fiscal summary is inaccurate. We conclude that on balance the summary fairly reflects the intent and purpose of the Initiative and that the fiscal information contained therein is not confusing.

### IV

For the foregoing reasons, we approve the Board's action.

### APPENDIX A

**Be it Enacted by the People of the State of Colorado:**

Article VII, section 2

(1) **General provisions.** This section shall create fundamental rights and strengthen citizen control of government. All parts shall be self-executing and severable and supersede conflicting constitutional, statutory, charter, or other state or local laws. Time limits shall extend only to expire on a district business day. Suits shall be filed within one year of a violation. Violations shall not be balanced away or harmonized, nor excused by substantial compliance or good faith, but shall require strictest scrutiny and full enforcement. Successful plaintiffs shall receive from a district all costs paid on their behalf and attorney fees, contingent or not, but defendants only if a suit be frivolous.

(2) **Term definitions.** (a) "Ballot title" means all language on a state or local ballot describing a specific petition.

(b) "District" means the state or any local government, including enterprises, authorities, and all other governmental entities.

(c) "Petition" means a citizen-sponsored referendum or initiative on district legislative policy, which excludes the application of administrative procedures to specific situations.

(d) "Shall" means mandatory.

(3) **Petition rights.** (a) Petition rights shall exist in all districts. Required district registered elector petition entries shall not exceed 5% of district votes for secretary of state candidates in the last general election for that office. Initiative ballot titles shall broadly describe the general proposal, shall not exceed 100 words, shall be set within 7 days of a request, and may also be set by any state district court. Public comment shall be allowed, but not a summary or fiscal note. Such ballot titles and all challenges to initiatives on single-subject grounds shall be appealed to the supreme court only within 5 days of the setting, finally decided only within 21 days of the appeal, and broadly construed to aid initiatives. Within 7 days of a final decision or of a request for referendum petition forms, districts shall print and deliver requested petition forms and may charge up to one dollar per 100–entry petition form. All districts shall adapt the 1988 state petition forms with no space or listing required for a county. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning on district-owned property then open to public passage shall not be limited. Except for petition form charges, no petition process fee, card, badge, bond, licensing, or training for petition agents or circulators shall be required. The use of paid circulators shall not create extra legal duties.

(b) No more than 9 legislative measures passed in a district in any year without a binding referral to district voters at the next ballot issue election shall be excepted from possible referendum petitions. Any excepted measure shall be passed by a ¾ths vote of all members of the local board or of each house of the general assembly. Appropriations for district support are exempt from referendum petitions. No measure shall be fully or partly passed again, even with an exception, while a referendum petition on it is in progress. Any state measure not excepted from a possible referendum petition shall take ef-

fect 91 days or more after the general assembly session passing it finally adjourns, and such local measure 91 days or more after post-passage publication. Only an initial filing of referendum petitions by the 90th day after such event shall delay the effective date until the election or final petition invalidation. If voters reject such a measure, it shall be fully or partly enacted in the next 8 years only with voter approval. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (type of measure and number only) BE APPROVED?" Such petitions shall not have a title-setting hearing or appeal or any single-subject challenge.

(c) Petitions shall be initially filed within 9 months of petition form delivery. Valid petitions not initially filed 3 months or more before an election shall be voted on at the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid petition entries until disproven beyond a reasonable doubt. Technical defects and minor variations shall be broadly construed to aid petitions. Listing a mailing address shown on the signer's registration record shall be valid. Protests shall be filed within 7 days of petition filing and not amended. Hearings shall be public, limited to reasons itemized in the protest, use judicial rules of evidence and procedure, and end within 14 days of protest filing. Random sampling or machine reading of entries shall be inadmissible. Petitioners shall have 7 days after all validation procedures and appeals to file corrections and new petition entries made at any time, to which all validation procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions shall receive a ballot number and ballot placement which remain during all such procedures and appeals.

(d) All local petitions shall be Article X, section 20(3) ballot issues. All state petitions shall be voted on at any state ballot issue election. State petition agents shall be allowed to **file** up to 500 words for ballot information booklets, which shall be sent to addresses of all active registered electors. That filing shall be the maximum length for a summary of comments filed in opposition.

Booklet analysis of such petitions shall be limited to written comments filed by 45 days before the election and other information required by Article X, section 20(3)(b), which information shall apply to all petitions. A petition shall be approved only by a simple majority of those voting on the issue. Unless otherwise stated in the initiative or unless its text be unlawful, a future voter-approved initiative shall remain in effect until changed by voters. Unless passed by March 1, 1997, and with no exception from possible referendum petitions, future state or local petition laws, rules, or regulations shall require advance voter approval.

## APPENDIX B

### Proposed Initiative on "PETITIONS"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PETITIONS, AND, IN CONNECTION THEREWITH, CHANGING INITIATIVE AND REFERENDUM RIGHTS AND PROCEDURES; EXTENDING PETITION POWERS TO REGISTERED VOTERS OF ALL LOCAL GOVERNMENTS; LIMITING INITIATIVE BALLOT TITLES TO 100 WORDS; LIMITING THE ANNUAL NUMBER OF NEWLY ENACTED LAWS THAT GOVERNMENTS MAY EXCLUDE FROM POSSIBLE REFERENDUM PETITIONS; ESTABLISHING STANDARDS FOR REVIEW OF FILED PETITIONS; REQUIRING VOTER APPROVAL FOR FUTURE PETITION LAWS AND RULES AND FOR CHANGES TO CERTAIN FUTURE VOTER-APPROVED PETITIONS; AND AUTHORIZING LAWSUITS TO ENFORCE THE AMENDMENT.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PETITIONS, AND, IN CONNECTION THEREWITH, CHANGING INITIATIVE AND REFERENDUM RIGHTS AND PROCEDURES; EXTEND-

ING PETITION POWERS TO REGISTERED VOTERS OF ALL LOCAL GOVERNMENTS; LIMITING INITIATIVE BALLOT TITLES TO 100 WORDS; LIMITING THE ANNUAL NUMBER OF NEWLY ENACTED LAWS THAT GOVERNMENTS MAY EXCLUDE FROM POSSIBLE REFERENDUM PETITIONS; ESTABLISHING STANDARDS FOR REVIEW OF FILED PETITIONS; REQUIRING VOTER APPROVAL FOR FUTURE PETITION LAWS AND RULES AND FOR CHANGES TO CERTAIN FUTURE VOTER–APPROVED PETITIONS; AND AUTHORIZING LAWSUITS TO ENFORCE THE AMENDMENT?

The summary prepared by the Board is as follows:

This measure extends the petition powers to the registered voters of all local governments and prohibits infringing the right to petition peaceably on public property. The measure specifies the maximum number of required signatures for petitions. Initiative ballot titles are limited to 100 words, must beset within 7 days, and shall no longer include a summary or fiscal note. A ballot title may also be set by a state district court. Ballot title and single-subject challenges to initiatives must be filed with the supreme court within 5 days of title setting, and a decision must be rendered within 21 days of the appeal. State and local governments are required to print and deliver requested petition forms, but may charge up to $1.00 per 100–entry petition form. Except for petition form charges, no petition process fee, card, badge, bond, licensing, or training is required for petition agents or circulators.

The measure limits state and local governments to 9 newly enacted laws each year that can be excepted from possible referendum petitions, and requires a ¾ths vote of all members of the local board or of each house of the general assembly for such exception. State measures that are subject to possible referendum by petition may take effect no sooner than 91 days after adjournment of the general assembly, and local measures no sooner than 91 days after final publication. Referendum petitions are excluded from title-setting procedures or any single-subject challenge, and the wording of referendum petition ballot titles is specified.

The measure requires that petitions be initially filed within 9 months of petition form delivery, and specifies that valid petitions that are filed less than 3 months before an election shall be voted on at the next election. Any person signing a petition that is later notarized or verified is presumed to be a registered elector whose entry is valid until disproven beyond a reasonable doubt. Technical defects and minor variations are broadly construed to aid petitions. A person signing a petition is no longer required to list his or her county of residence. Protest hearings are public, are limited to reasons itemized in the protest, are conducted using judicial rules of evidence and procedure, and shall end within 14 days of protest filing. The results of any random sampling or machine reading of petition entries are inadmissible. The measure imposes a schedule to resolve protests and appeals and to allow petitioners to file corrections and new petition entries. When initially filed, petitions will receive a ballot number and ballot placement that remain during all such procedures and appeals.

The measure requires that all local petitions must be Article X, Section 20(3) ballot issues, and all state petitions must be voted on at any state ballot issue election. The comments filed by state petition proponents are limited to 500 words for ballot information booklets, and the summary of opponents' comments may not exceed the length of the proponents' comments. Booklet analysis of such petitions is limited to written comments filed by 45 days before the election and other information required by Article X, Section 20(3)(b), which information applies to all petitions.

The measure specifies that a petition shall be approved by a simple majority of those voting on the issue. The measure requires, with exceptions, voter approval to amend a voter-approved initiative and voter approval for certain future state or local petition laws, rules, or regulations.

The measure authorizes lawsuits to enforce the amendment, and allows attorney fees and

costs to successful plaintiffs but to defendants only if the action is deemed frivolous.

The requirement that a "district" pay all costs associated with legal actions brought by successful plaintiffs enforcing petitions could result in a negative fiscal impact on governmental entities depending on the number of actions filed and the number of decisions in favor of plaintiffs. For example, the Office of State Planning and Budgeting estimates that two title board cases and two signature verification cases successfully litigated by plaintiffs would cost the state $38,000.

The elimination of a fiscal note and a summary on initiatives would result in savings of $15,000 to the state.

The measure would result in additional cost to the state and local districts for printing and delivering the requested petition forms, although the cost may be offset by allowing the district to charge up to $1 for every 100–entry petition form.

If the current random sample verification of petition signatures is eliminated in response to the measure, it could result in an estimated additional cost of $10,000 to the state for each petition.

The measure provides easier access to the ballot through both the initiative and referendum process, which could result in additional ballot proposals at an estimated cost of $25,000 for each measure.