In the Matter of the TITLE, BALLOT TITLE, and SUBMISSION CLAUSE FOR 2007–2008 # 62,

Joseph B. Blake, Objector, Petitioner

v.

Joanne King and Larry Ellingson, Proponents, Respondents

and

William A. Hobbs, Daniel L. Cartin, and Daniel Domenico, Title Board.

No. 08SA90.

Supreme Court of Colorado, En Banc.

May 16, 2008.

Fairfield and Woods, P.C., Douglas J. Friednash, John M. Tanner, Susan F. Fisher, Denver, Colorado, Attorneys for Petitioner.

Isaacson Rosenbaum P.C., Mark G. Grueskin, Denver, Colorado, Attorneys for Respondents.

Justice RICE delivered the Opinion of the Court.

In this original proceeding brought pursuant to section 1–40–107(2), C.R.S. (2007), registered elector Joseph Blake ("Petitioner") seeks review of the Title Board's May 5, 2008 action in fixing the title, ballot title and submission clause ("titles") for a proposed ballot initiative designated "2007–2008 # 62" ("the Initiative").[1] The Initiative, if enacted, would amend the Colorado Constitution to establish standards and procedures to discharge or suspend employees. Under the proposal, an employee could not be discharged or suspended unless an employer establishes just cause for the discharge or suspension. The measure defines "just cause." It also requires employers to provide employees who have been discharged or suspended written documentation describing the justifications for the disciplinary action. Finally, the measure allows an employee who believes he or she was discharged or suspended without just cause to apply for mediation.

We conclude that the Initiative contains only one subject in compliance with article V, section 1(5.5) of the Colorado Constitution. In addition, we conclude that the titles set by the Title Board clearly express the subject of the Initiative and contain no catch phrases. Finally, we conclude that amendments made to the Initiative in response to comments from legislative staff did not violate the requirement that substantial amendments must be resubmitted to the directors of the Legislative Council and the Office of Legislative Legal Services. Accordingly, we affirm the action of the Title Board.

## I.  Facts

On February 20, 2008, the Title Board conducted its initial public meeting on the proposed initiative pursuant to section 1–40–106(1), C.R.S. (2007). The Title Board designated and fixed a title, ballot title, and submission clause for the Initiative. Petitioner timely filed a Motion for Rehearing pursuant to section 1–40–108(1), C.R.S. (2007), on February 27, 2008. On March 5, 2008, the Title Board denied Petitioner's motion, after which Petitioner initiated this original proceeding for review of the Title Board's action.

The Initiative's text simply provides, "No employee may be discharged or suspended unless the employer has first established just cause for the discharge or suspension." The Initiative defines "just cause" to mean: (a) incompetence; (b) substandard performance of assigned job duties; (c) neglect of assigned job duties; (d) repeated violations of the employer's written policies and procedures related to job performance; (e) gross insubordination that affects job performance; (f) willful misconduct that affects job performance; (g) conviction of a crime involving moral turpitude; (h) filing of bankruptcy by the employer; or (i) simultaneous discharge or suspension of ten percent or more of the employer's workforce in Colorado. The employer is required to provide to the employee written documentation of the just cause used to justify the action. Any employee who believes he or she was discharged or suspended without just cause may, within thirty

---

**1.** The title and text of Initiative 2007–2008 # 62 is attached hereto as an appendix.

days of the action, apply for mediation of his or her claim. Within 180 days after an employee files for mediation, the Initiative provides that a hearing shall be held before a private mediator. The mediator is empowered to award the employee back pay or reinstatement or both. The mediator is required to assess the costs of his or her services to the losing party, and is given the discretion to award attorneys fees to the prevailing party. The Initiative states that the mediator's decision shall be final.

Petitioner argues that this Initiative is unconstitutional because it violates the single-subject requirement of our state constitution. Specifically, Petitioner argues that the Initiative contains the following subjects: the elimination of the employment at-will doctrine in Colorado; the elimination of Colorado's civil service system; the elimination of the ability for employer and employee to contract and enter into collective bargaining agreements; the restriction of a party's rights to access the court system; and the restriction of a party's due process right to appeal a mediator's decision.

In addition, Petitioner argues that the titles of the Initiative are misleading and do not correctly and fairly express the Initiative's true intent and meaning. Specifically, Petitioner argues that the Initiative fails to express the purpose of the Initiative to repeal the employment at-will doctrine; fails to express that the Initiative eliminates the civil service system; fails to express that the measure eliminates the constitutional right to contract; fails to clearly express that the measure creates a new just cause standard governing the suspension and discharge of all employees in Colorado; and fails to express that the measure eliminates the fundamental right of access to the courts and due process rights to challenge a mediator's final decision. Upon our review of the relevant law governing the single subject and clear title requirements, we disagree with Petitioner's contentions.

## II.  Law

■ We held in *In re Proposed Initiative for 1999–2000 # 25*, 974 P.2d 458, 460–61 (Colo.1999), that two closely interdependent

inquiries are germane to our review of a proposed initiative: one forbidding the union of separate and distinct subjects in the same proposed initiative, and the other commanding that the single subject treated in the body of the proposed initiative shall be clearly expressed in its titles. The following statement made by this court over one hundred years ago is illustrative of the duality of this requirement:

> [The constitutional provision] embraces two mandates, vis.: one forbidding the union in the same legislative bill of separate and distinct subjects, and the other commanding that the subject treated in the body of the [proposal] shall be clearly expressed in its title. Each of these mandates is designed to obviate flagrant evils connected with the adoption of laws. The former prevents joining in the same [proposal] disconnected and incongruous matters. The purpose of the latter is "... to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the [proposal]."

*In re Breene,* 14 Colo. 401, 404, 406, 24 P. 3, 3–4 (1890) (internal citations omitted). Adopting the foregoing statement from *Breene* as the analytical framework for our analysis, we examine the interrelated single-subject requirement and the clear title requirement in turn.

### A.  Single–Subject Requirement

■ The Colorado Constitution provides that the Title Board may not set the title of a proposed initiative, or submit it to the voters, if the initiative contains multiple subjects. *See In re Proposed Initiative "Petitions",* 907 P.2d 586, 588 (Colo.1995). Article V, section 1(5.5), which sets forth the single-subject requirement for initiatives, provides, in pertinent part:

> *No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title;* but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title

cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

(emphasis added). A proposal that has "at least two distinct and separate purposes which are not dependent upon or connected with each other" violates the foregoing single-subject requirement. *See, e.g., In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d 1192, 1196 (Colo.1998); 960 P.2d at 1196; *In re Proposed Initiative "Amend TABOR 25",* 900 P.2d 121, 125 (Colo.1995); *People ex rel. Elder v. Sours,* 31 Colo. 369, 403, 74 P. 167, 177 (1903) (holding that, in order for the text of a bill to constitute more than one subject, it "must have at least two distinct and separate purposes which are not dependent upon or connected with each other"); *In re Breene,* 14 Colo. at 404, 24 P. at 3 (interpreting single-subject requirement as prohibiting a legislative act from addressing "disconnected and incongruous matters"). In *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d 1076, 1080 (Colo.1995), this court further refined the single-subject requirement by noting that, even when provisions share some common characteristic, they do not satisfy the single-subject requirement unless they have a "unifying or common objective."

■ Furthermore, a proposed initiative contains multiple subjects not only when it proposes *new* provisions constituting multiple subjects, but also when it proposes to *repeal* multiple subjects. *See In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1196; *In re Proposed Initiative "1996–4",* 916 P.2d 528, 533 (Colo.1996).

■ The purpose behind this constitutional single-subject requirement is simple: it seeks "to prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), C.R.S. (2007). This is in addition to forbidding "the treatment of incongruous subjects in the same measure [to avoid] securing the enactment of measures that could not be carried upon their merits." § 1–40–106.5(1)(e)(I). To this end, the prohibition against multiple subjects

"prevents the proponents of an initiative from joining multiple subjects into a single initiative in the hope of attracting support from various factions which may have different or conflicting interests." *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d at 1079; *see also Catron v. Bd. of County Comm'rs,* 18 Colo. 553, 557, 33 P. 513, 514 (1893) (holding that the single-subject requirement serves the beneficent purpose of making each legislative proposal dependent upon its own merits for passage).

■ It merits emphasis that the proponents of an initiative bear the "ultimate responsibility for formulating a clear and understandable proposal for the voters to consider." *In re Proposed Initiative for 1999–2000 # 33,* 975 P.2d 175, 176 (Colo. 1999); *see also In re Proposed Initiative for 1999–2000 # 29,* 972 P.2d 257, 262 (Colo.1999).

### B. Clear Title Requirement

The standard for evaluating the clarity of titles was first set forth by this court in *In re Breene:*

> It will not do to say that the general subject of [a proposal] may be gathered from the body of the [proposal], for, to sustain the [proposal] at all, it must be expressed in the title.... The matter covered by legislation is to be "clearly," not "dubiously" or "obscurely," indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning, aided by superior rhetoric, will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect, as well as the trained legal mind.

14 Colo. at 406, 24 P. at 4.

The foregoing clear title standard was incorporated into the statutes governing the initiative process in 1993:

> In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a "yes" or "no" vote will be unclear.

§ 1–40–106(3)(b). This statutory section further provides that the ballot titles "shall correctly and fairly express the true intent and meaning" of the initiative, and "shall unambiguously state the principle of the provision sought to be added, amended or repealed." *Id.; see also In re Proposed Initiative for 1999–2000 # 29,* 972 P.2d at 266. As noted above, in 1994, article V, section 1(5.5) incorporated the clear title requirement for initiatives into the Colorado Constitution, stating that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title."

■ As we have previously noted, "[p]erfection is not the goal" of the Title Board's title-setting efforts. *In re Proposed Initiative for 1999–2000 # 29,* 972 P.2d at 266. However, the Title Board's chosen language must not mislead voters:

> We do not consider whether the Board set the best possible title, ballot title and submission clause and summary. Rather our duty is to ensure that the title, ballot title and submission clause, and summary fairly reflect the proposed initiative *so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board.*

*In re Proposed Initiative "Concerning the Fair Treatment of Injured Workers",* 873 P.2d 718, 719 (Colo.1994) (emphasis added); *see also In re Proposed Initiative for 1999–2000 # 25,* 974 P.2d at 462–65; *In re Proposed Initiative for 1997–1998 # 62,* 961 P.2d 1077, 1082 (Colo.1998).

### C. The Role of the Title Board and Standard of Review

In order to facilitate the initiative process, the General Assembly has determined that the Title Board bears the initial responsibility for ensuring that the proposal comports with the single-subject/clear title requirement. *See In re Proposed Initiative for 1999–2000 # 25,* 974 P.2d at 465; *In re Proposed Initiative for 1999–2000 # 29,* 972 P.2d at 260. Specifically, Colorado law provides that the Title Board must: (1) not permit "the treatment of incongruous subjects in the same measure," § 1–40–106.5(1)(e)(I); and (2) "prevent surreptitious measures and apprise the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II). We recognize the challenging nature of the Title Board's task, as the implementation of the single-subject/clear title mandate often requires the balancing of competing interests.[2]

■ Our review of actions taken by the Title Board is of a limited scope. For example, we "will not rewrite the titles or submission clause for the Board, and we will reverse the Board's action in preparing them only if they contain a material and significant omission, misstatement, or misrepresentation." *In re Proposed Initiative for 1997–1998 # 62,* 961 P.2d at 1082. This prohibition requires us to engage all legitimate presumptions in favor of the propriety of the Title Board's actions when reviewing proposed initiatives. *See, e.g., In re Proposed Initiative "Automobile Insurance Coverage",* 877 P.2d 853, 856 (Colo.1994); *Say v. Baker,* 137 Colo. 155, 159, 322 P.2d 317, 319 (1958). Therefore, when determining whether a proposed initiative comports with the single-subject/clear title requirement, we may "not address the merits of a proposed initiative, nor [may] we interpret its language or predict its application if adopted by the electorate." *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1197; *see also In re Proposed Initiative "Petitions",* 907 P.2d at 590; *In re Petition on Campaign & Political Fin.,* 877 P.2d 311, 313 (Colo.1994). Our inquiry is limited to determining whether the constitutional prohibition against multiple subjects and unclear titles has been violated. *See In re Proposed Ini-*

---

**2.** In *In re Proposed Initiative for 1999–2000 # 25,* 974 P.2d 458, 464 (Colo.1999), we noted that:

> Implementation of this mandate often requires the Board to balance competing interests. For example, the Board must assist potential proponents in implementing their right to initiate laws, while concurrently protecting the voters against confusion and fraud. Likewise, the Board must give deference to the intent of the proposal as expressed by its proponent, without neglecting its duty to consider the public confusion that might result from misleading titles.

(internal citations omitted).

*tiative for 1997–98 # 30,* 959 P.2d 822, 824 (Colo.1998); *see also* § 1–40–106.5(2) (providing that article V, section 1(5.5) is to be "liberally construed, so as to avert the practices against which [it is] aimed and, at the same time, to preserve and protect the right of initiative and referendum"); *In re Proposed Initiative for 1999–2000 # 29,* 972 P.2d at 265 (reviewing previous version of Initiative # 104 and holding that this court need not review the entirety of a party's contentions regarding the alleged unconstitutionality of a proposed initiative after determining that the initiative contained "multiple subjects in violation of Colorado's Constitution").

## III.   Analysis

### A.   This Initiative Does Not Contain Multiple Subjects

■ We hold that Initiative # 62 has only one subject: the establishment of a just cause requirement for discharging or suspending an employee. All of the sections of the measure relate to this subject and the necessary association exists among the provisions of the Initiative, in that each provision relates to creating, implementing, or enforcing a just cause standard in the employment setting for certain employees.

Petitioner asserts that the Initiative contains at least five subjects, namely: the elimination of the employment at-will doctrine in Colorado; the elimination of Colorado's civil service system; the elimination of the ability for employer and employee to contract and enter into collective bargaining agreements; the restriction of a party's rights to access the court system; and the restriction of a party's due process right to appeal a mediator's decision. This claim is without merit. Petitioner essentially asks this court to determine the Initiative's efficacy, construction, and future application, a task we cannot perform unless and until the voters approve the Initiative. *See In re Title, Ballot Title and Submission Clause, and Summary for 1999–2000 # 258(A),* 4 P.3d 1094, 1097–98 (Colo. 2000).

For example, Petitioner's assertion that the measure will repeal the state's civil service system depends on the assumption that the term "employee" applies to state government employees. The Initiative does not define "employee," leaving undetermined the question of whether the measure includes state employees. Similarly, Petitioner claims as separate subjects the Initiative's alleged interference with the right of access to the courts and the alleged elimination of the right to appeal an adverse ruling by a mediator. Petitioner's argument assumes that the word "final," in the Initiative provision dictating that the "decision of the mediator shall be final," precludes all subsequent court actions or other types of review. However, this term could also mean that no additional conditions precedent must be exhausted prior to filing an action in court.

In short, Petitioner thinly parses the language of the measure in an attempt to create separate and distinct subjects. In order to do this, Petitioner speculates about the effects of the measure, postulating that if the measure is interpreted in a way that fits his conclusions, then the measure will have multiple effects. This approach is erroneous.

We have held, "In determining whether a proposed initiative comports with the single subject requirement, [w]e do not address the merits of a proposed initiative, *nor do we interpret its language or predict its application if adopted by the electorate."* *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1197 (emphasis added) (quoting *In re Proposed Initiative "Petitions",* 907 P.2d 586 at 590). Because Petitioner's argument is comprised of mere speculation about the potential effects of the Initiative, and because we hold that this Initiative relates in its entirety to the establishment of a just cause requirement for the discharge or suspension of an employee, we affirm the decision of the Title Board that this Initiative contains only one subject.

### B.   The Titles Are Clear and Accurate

■ Petitioner claims that the titles set by the Title Board fail to express the Initiative's purpose, which Petitioner purports is to replace the employment at-will relationship with the creation of a new standard for terminating and suspending employees. In addition, Petitioner argues that the titles fail

to express the fact that the Initiative eliminates the rights of an employer to contract; fail to advise the voters that the Initiative eliminates the state's civil service system; fail to advise the voters of possible employer liability for damages under the Initiative; fail to advise the voters that the Initiative eliminates a fundamental right of access to the courts; fail to advise the voters that the Initiative eliminates the right of employees to enter into written collective bargaining agreements; and fail to advise the voters of the post-discharge or post-suspension mediation process prescribed by the Initiative. We decline to adopt Petitioner's argument, an argument that virtually mirrors his contentions with respect to the single-subject requirement.

While titles must be fair, clear, accurate and complete, the Title Board is not required to set out every detail of an initiative. *In re Proposed Initiative for 1999–2000 # 256,* 12 P.3d 246, 255 (Colo.2000). In addition, the Title Board may not speculate as to the measure's efficacy, or its practical or legal effects. *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1197. We give great deference to the Title Board in the exercise of its drafting authority, and will reverse the Title Board's decision only if the titles are insufficient, unfair or misleading. *In re Proposed Initiative for 1999–2000 # 256,* 12 P.3d at 255.

Here, the titles track the Initiative. The titles inform the voters that the measure "prohibit[s] the discharge or suspension of an employee by an employer unless the employer has first established just cause." The titles note that the Initiative defines "just cause" and summarize the Initiative's definition. Next, the titles state that the employer must "provide to an employee written documentation of the basis for his discharge or suspension." The titles explain that the employee may seek mediation and ask for back wages and reinstatement. The titles note that the measure allows the mediator to assess costs for his or her services and authorizes attorney's fees to the prevailing parties. Finally, the titles state that the General Assembly may enact legislation to facilitate the purposes of the amendment.

We thus reject Petitioner's assertion that the titles unfairly characterize the Initiative or fail to explain its potential effects. As with his argument concerning the single-subject requirement, Petitioner's argument boils down to a desire to have the titles state possible or speculative outcomes should the Initiative pass. For example, the potential impact of the Initiative, if any, on the right of access to the courts is uncertain, yet Petitioner would have that possible consequence included in the titles. Likewise, the potential effect of the Initiative, if any, on the state civil service system is uncertain, yet Petitioner would have those possible effects spelled out in the titles as well.

In short, as discussed in part III.A. above, the Title Board is neither obligated nor authorized to construe the future legal effects of an initiative as part of the ballot title. *See In re Proposed Initiatives 2001–2002 # 21 & # 22,* 44 P.3d 213, 215–16 (Colo.2002). The interplay of a ballot initiative with various provisions of existing law is an issue for post-election litigation, not the basis for a ballot title challenge. *In re Proposed Initiative 1999–2000 # 256,* 12 P.3d at 256. The Title Board has substantial discretion in formulating the verbiage of a title and is not required to draw a "before and after" picture of the law in the ballot title. *In re Proposed Initiative 1999–2000 # 246(e),* 8 P.3d 1194, 1197 (Colo.2000).

## C. The Titles Do Not Contain "Catch" Phrases

Petitioner claims that the terms "just cause" and "mediation" are impermissible catch phrases, obscuring the true purpose of the Initiative. "Catch phrases are words that work to a proposal's favor without contributing to voter understanding. By drawing attention to themselves and triggering a favorable response, catch phrases generate support for a proposal that hinges not on the content of the proposal itself, but merely on the wording of the catch phrase." *In re Proposed Initiative 1999–2000 # 258(A),* 4 P.3d at 1100. We disagree with Petitioner's assertion that "just cause" and "mediation" are prohibited catch phrases.

"Just cause" accurately describes an element of the Initiative. In addition, the term sets forth a legal standard commonly used in the law. Likewise, "mediation" is a term commonly used in the law. In *In re Proposed Initiative 1999–2000 # 256*, we rejected the notion that the term "management of growth" was a catch phrase, holding that it was "a neutral phrase, with none of the hallmarks that have characterized catch phrases in the past." 12 P.3d at 257. Likewise, in *In re Proposed Initiative 1997–98 # 112*, we held that the phrase "protect the environment and human health" did not rise to the level of a catch phrase. 962 P.2d 255, 256 (Colo.1998). We conclude that "just cause" and "mediation" are no more prejudicial in terms of voter perception than these phrases we have upheld in the past.

### D. Changes Made to the Initiative Do Not Require Resubmission

Finally, Petitioner argues that the proponents should be required to resubmit the Initiative because the final version submitted to the Title Board contained changes that Petitioner urges were not drafted in response to suggestions by legislative staff. We disagree.

Before a proposed initiative comes before the Title Board, an original draft must be submitted to the directors of Legislative Council and the Office of Legislative Legal Services. The directors hold a public meeting at which they may raise questions and editorial comments. § 1–45–105(1), C.R.S. (2007). After the meeting, the proponents of an initiative may amend their measure. Any substantial amendment, other than one made in direct response to the directors' comments, must be resubmitted to the directors.

In this case, Petitioner's argument focuses on changes proponents made to the definition of "just cause" after receiving feedback from legislative staff. The review and comment memorandum drafted by Legislative Council and the Office of Legislative Legal Services stated:

> 5. There appears to be no allowance for layoffs due to a lack of work or even the bankruptcy of the employer. Is this the proponents' intent? If so:

> a. Where should the employee stand vis-à-vis other creditors of the employer?

> b. If the employer is a corporation and has no available assets, would the employee be able to hold the individualized officers of the corporate employer personally liable? Do the proponents wish to clarify whether this would be the case and, if so, what procedure should be followed to accomplish it?

In response, the Initiative's proponents made two changes to the measure to reflect the legislative staff's concern about "a lack of work," adding the ten percent across-the-board layoff element of "just cause," as well as the element addressing "the bankruptcy of the employer." We find it clear that these changes were made in direct response to the comments in the memorandum quoted above. Thus, no resubmission to the directors was necessary. *See In re Proposed Initiative 1997–98 # 10*, 943 P.2d 897, 901 (Colo.1997).

### IV. Conclusion

We conclude that the Initiative contains only one subject in compliance with article V, section 1(5.5) of the Colorado Constitution. In addition, we conclude that the titles set by the Title Board clearly express the subject of the Initiative and contain no catch phrases. Finally, we conclude that amendments made to the Initiative in response to feedback from legislative staff did not violate the requirement that substantial amendments to the petition must be resubmitted to the directors of the Legislative Council and the Office of Legislative Legal Services. Accordingly, we affirm the action of the Title Board.

Justice HOBBS dissents.

Justice HOBBS, dissenting.

I respectfully dissent. In my view, this ballot initiative proposal to amend the Colorado Constitution contains four separate and discrete subjects that are not dependent upon or necessarily connected with each other: (1) elimination of Colorado's at-will employment doctrine, (2) imposition of binding arbitration in all employment termination disputes, (3) implied repeal of the constitutional right of access to the courts in employ-

ment termination disputes, and (4) implied repeal of the state's Civil Service System review rights for state employees. The initiative also contains an impermissible catch phrase, "mediation," which will mislead the voters into believing that employment termination disputes are subject to voluntary nonbinding mediation. Instead, the initiative proposes involuntary binding arbitration without recourse. Because the initiative contains two or more discrete subjects that are not dependent upon or necessarily connected with each other, I would reverse the action of the Title Board and remand this case with directions to strike the titles and return the initiative to its proponents.

Article V, section 1(5.5) of the Colorado Constitution prohibits initiatives from containing two or more separate and discrete subjects that are not dependent upon or necessarily connected with each other. *In re Title, Ballot Title & Submission Clause, for 2007-2008 # 17*, 172 P.3d 871, 873 (Colo. 2007). Titles may not include an impermissible catch phrase that unfairly prejudices the proposal in its favor. *In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 258(A)*, 4 P.3d 1094, 1098 (Colo.2000). When such a catch phrase forms the basis of a slogan that would mislead the voters into believing the initiative is something it is not, the Title Board should refuse to include the catch phrase in the titles. *Id.* at 1100.

When analyzing whether an initiative meets the single subject requirement, we characterize the proposal only insofar as necessary to conduct review for compliance with the constitutional and statutory provisions that apply to the initiative process. *In re Title, Ballot Title & Submission Clause, & Summary for 1997-98 # 30*, 959 P.2d 822, 825 (Colo.1998). We apply the general rules of statutory construction and give the words of the initiative their plain and ordinary meaning. *In re Title, Ballot Title & Submission Clause, & Summary for 2005-2006 # 75*, 138 P.3d 267, 271 (Colo.2006).

The initiative contains a proposed constitutional amendment that would terminate Colorado's long-standing at-will employment doctrine. If the initiative contained only this proposal it would satisfy the requirements of article V, section 1(5.5) restricting initiatives to a single subject. But, the initiative also proposes three other discrete and separate subjects that are not dependent upon or necessarily connected with each other.

The second subject concerns review of employment termination disputes, misleadingly titled "mediation" in the initiative. Under Colorado's Dispute Resolution Act, "mediation" means "an intervention in dispute negotiations by a trained neutral third party with the purpose of assisting the parties to reach their own solution." § 13-22-302(2.4), C.R.S. (2007); *see also* Black's Law Dictionary 996 (7th ed.1999) (defining "mediation" as "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution").

The subject called "mediation" in the proposed constitutional amendment is not mediation at all. To the contrary, by mandate of sections 13(4)(A) & (E), the initiative would impose a unique form of arbitration for employment termination disputes—a final single-person decision that would preclude access to the courts for review of the decision of the "private mediator."

Under Colorado's Uniform Arbitration Act, section 13-22-206, C.R.S. (2007), parties may enter into a voluntary agreement for binding arbitration that is nevertheless subject to limited judicial review under section 13-22-223. The second subject of the initiative's proposed constitutional amendment would introduce into Colorado law, by constitutional mandate, a heretofore unknown form of compelled arbitration that mocks the existing framework of Colorado law.

The third subject of the initiative's proposed constitutional amendment is the implied repeal of the right of access to the courts in employment termination disputes. Article II, section 6 of the Colorado Constitution's Bill of Rights currently provides, "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay." Article VI of the constitution establishes a third

branch of government, the judiciary, for the purpose of providing protection for the constitutional rights of Coloradans.

The initiative in this case proposes to nullify for employer and employee alike a fundamental bulwark of a constitutional republic, the right of access to justice through judicial process and decision. By precluding any judicial review of the so-called mediator's final decision, section 4(E) of the initiative proposes a radical departure from the constitutional compact the people of this state have made since 1876.

The fourth subject of the amendment is an implied repeal of a very significant provision of Colorado's civil service system established by article XII, section 13 of the Colorado Constitution. This provision creates a personnel system that includes the right of appeal to the state personnel board; those decisions, in turn, are subject to judicial review. Colo. Const. art. XII, § 13(8); *State Civil Serv. Comm'n v. Hoag*, 88 Colo. 169, 174–75, 293 P. 338, 340 (1930). The initiative in this case, by implied repeal of this civil service provision, would nullify for state employees their right of review by the personnel board. Instead, their cases would be heard by only one individual, a single private "mediator," whose decision is "final."

This initiative does not meet the requirement of article V, section 1(5.5) of the Colorado Constitution, which prohibits initiatives from containing two or more separate and discrete subjects that are not dependent upon or necessarily connected with each other. A single subject initiative terminating Colorado's current at-will employment doctrine would meet the standard for title setting. But this initiative goes to the extreme of nullifying other enumerated constitutional provisions and protections. In the past, we have exercised our role to prevent the Title Board from setting the titles for a multiple subject initiative that would accomplish such purposes; we should do so in this case as well. *See, e.g., In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 29*, 972 P.2d 257 (Colo.1999); *In re Title, Ballot Title & Submission Clause, &*

*Summary for 1997–98 # 45*, 960 P.2d 648 (Colo.1998).

Accordingly, I respectfully dissent.

## APPENDIX

**Proposed Initiative 2007–2008 # 62** (Unofficially captioned "Cause for Employee Suspension and Discharge" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Title Board.)

The title as designated and fixed by the Title Board is as follows:

An amendment to the Colorado constitution concerning just cause for action against an employee by an employer, and, in connection therewith, prohibiting the discharge or suspension of an employee by an employer unless the employer has first established just cause; defining "just cause" to mean specified types of employee misconduct and substandard job performance, the filing of bankruptcy by the employer, or the simultaneous discharge or suspension of ten percent or more of the employer's workforce in Colorado; requiring an employer to provide to an employee written documentation of the basis for his discharge or suspension; allowing an employee who believes he was discharged or suspended without just cause to apply for mediation to seek an award of back wages and reinstatement; allowing the mediator to assess costs for his services to the losing party and award attorneys fees to the prevailing party; and authorizing the general assembly to enact legislation to facilitate the purposes of this amendment.

The ballot title and submission clause as designated and fixed by the Title Board is as follows:

Shall there be an amendment to the Colorado constitution concerning just cause for action against an employee by an employer, and, in connection therewith, prohibiting the discharge or suspension of an employee by an employer unless the employer has first established just cause; defining "just cause" to mean specified types of types of employee misconduct and substandard job performance, the filing of bankruptcy by the employer, or the simultaneous discharge or suspension of ten percent or more of the

employer's workforce in Colorado; requiring an employer to provide to an employee written documentation of the basis for his discharge or suspension; allowing an employee who believes he was discharged or suspended without just cause to apply for mediation to seek an award of back wages and reinstatement; allowing the mediator to assess costs for his services to the losing party and award attorneys fees to the prevailing party; and authorizing the general assembly to enact legislation to facilitate the purposes of this amendment?

The text of proposed Initiative 2007–2008 # 62 is as follows:

Be it enacted by the People of the State of Colorado:

Article XVIII of the Colorado Constitution is amended BY THE ADDITION OF A NEW SECTION 13 to read:

SECTION 13. JUST CAUSE FOR EMPLOYEE DISCHARGE OR SUSPENSION.

(1) NO EMPLOYEE MAY BE DISCHARGED OR SUSPENDED UNLESS THE EMPLOYER HAS FIRST ESTABLISHED JUST CAUSE FOR THE DISCHARGE OR SUSPENSION.

(2) FOR PURPOSES OF THIS SECTION, "JUST CAUSE" MEANS:

(A) INCOMPETENCE;

(B) SUBSTANDARD PERFORMANCE OF ASSIGNED JOB DUTIES;

(C) NEGLECT OF ASSIGNED JOB DUTIES;

(D) REPEATED VIOLATIONS OF THE EMPLOYER'S WRITTEN POLICIES AND PROCEDURES RELATING TO JOB PERFORMANCE;

(E) GROSS INSUBORDINATION THAT AFFECTS JOB PERFORMANCE;

(F) WILLFUL MISCONDUCT THAT AFFECTS JOB PERFORMANCE

(G) CONVICTION OF A CRIME INVOLVING MORAL TURPITUDE;

(H) FILING OF BANKRUPTCY BY THE EMPLOYER; OR

(I) SIMULTANEOUS DISCHARGE OR SUSPENSION OF TEN PERCENT OR MORE OF THE EMPLOYER'S WORKFORCE IN COLORADO

(3) AN EMPLOYER SHALL PROVIDE TO ANY EMPLOYEE WHO HAS BEEN DISCHARGED OR SUSPENDED THE EMPLOYER'S WRITTEN DOCUMENTATION OF THE JUST CAUSE USED TO JUSTIFY SUCH DISCHARGE OR SUSPENSION.

(4) (A) ANY EMPLOYEE WHO BELIEVES HE WAS DISCHARGED OR SUSPENDED WITHOUT JUST CAUSE MAY, WITHIN THIRTY DAYS AFTER NOTIFICATION OF THE DISCHARGE OR SUSPENSION, APPLY FOR MEDIATION OF A CLAIM FOR WRONGFUL DISCHARGE OR SUSPENSION. WITHIN ONE HUNDRED TWENTY DAYS AFTER AN EMPLOYEE FILES FOR MEDIATION, A HEARING SHALL BE HELD BEFORE A PRIVATE MEDIATOR. AT HEARING, THE EMPLOYEE AND THE EMPLOYER SHALL BE PERMITTED TO PRESENT EVIDENCE AND MAKE LEGAL ARGUMENT.

(B) A MEDIATOR WHO FINDS THAT AN EMPLOYEE WAS DISCHARGED OR SUSPENDED WITHOUT JUST CAUSE MAY AWARD THE EMPLOYEE ALL BACK WAGES OR REINSTATEMENT IN HIS FORMER JOB OR BOTH.

(C) THE MEDIATOR SHALL ASSESS THE COSTS FOR HIS OR HER SERVICES TO THE LOSING PARTY.

(D) THE MEDIATOR MAY AWARD ATTORNEYS FEES TO THE PREVAILING PARTY AS TO ANY CLAIM MADE BY THE EMPLOYEE.

(E) IN ALL MATTERS DECIDED PURSUANT TO THIS SECTION 13(4), THE DECISION OF THE MEDIATOR SHALL BE FINAL.

(5) THE GENERAL ASSEMBLY MAY ENACT LEGISLATION TO FACILITATE THE PURPOSES OF THIS SECTION, INCLUDING BUT NOT LIMITED TO LEGISLATION ADDRESSING APPLICATIONS FOR MEDIATION AND THE SELECTION OF MEDIATORS BY THE PARTIES.

(6) THIS SECTION SHALL BECOME EFFECTIVE UPON PROCLAMATION OF THE GOVERNOR REGARDING THE VOTES CAST ON THIS AMENDMENT.